In re the MARRIAGE OF Richard L. NELSON and Jane M. Nelson.

Upon the Petition of Richard Lawrence Nelson, Jr., Appellant,

And Concerning Jane Marie Nelson, Appellee.

No. 01–0780.

Supreme Court of Iowa.

Dec. 18, 2002.

Dennis A. Bjorklund, Coralville, for appellant.

Robert N. Johnson, III, of Saunders, Humphrey & Johnson, LLP, Ft. Madison, for appellee.

TERNUS, Justice.

The district court and the court of appeals concluded the appellant, Richard Nelson, should pay increased child support to his former wife, appellee Jane Nelson, for the Nelsons' disabled adult child, Marie. We reject Richard's contention that Marie is capable of being self-supporting. Because we also conclude that the amount of support ordered by the district court is fair and reasonable, we affirm the decision of the court of appeals and the judgment of the district court.

I. *Background Proceedings.*

Richard and Jane were divorced in 1998, and, under the terms of the decree, shared joint legal custody of their two children, Marie and Michael. Richard was granted sole physical care of Michael, born in 1986, and Jane was granted sole physical care of Marie, born in 1980. Each party was granted "liberal and reasonable rights of visitation."

The district court in the original dissolution action also ordered both parties to pay child support. Although Marie had turned eighteen three days before the decree was entered, the court ruled that child support would include "a child of any age who is dependent on the parties because of physical or mental disabilities." Marie is a high-functioning autistic adult. Therefore, the court ordered Richard to pay $11.59 per week to Jane for Marie's support. Jane was ordered to pay $28.67 per week to Richard for Michael's support.

In October 2000, Jane filed an application for modification, seeking a specific schedule for her visitation with Michael. In response, Richard sought an increase in Jane's child support payments. Additionally, the parties disputed whether Marie was a mentally disabled dependent adult for whom Richard should continue to pay child support.

After trial, the court ordered a specific visitation schedule for Jane with Michael and, because Jane's support payments deviated by more than ten percent from the amount due under the current child support guidelines, the court also increased Jane's child support obligation to $62 per week. *See* Iowa Code § 598.21(9) (1999) (providing that a substantial change of circumstances so as to support modification of the decree exists when child support payments deviate by ten percent or more from the current guidelines amount). These rulings are not challenged in this appeal.

The final issue addressed by the district court was Richard's obligation to pay support for Marie. The court concluded the evidence would not support a finding that Marie was now employable such that she could work a steady job for a steady wage. The evidence did show, however, that Marie receives social security disability payments as well as Title XIX medical coverage, and that these benefits are not sufficient to cover her financial needs. The court concluded, apparently based on Richard's increased earnings since the divorce, that he had the financial means to contribute more than $11.59 per week towards Marie's support, and so increased Richard's child support obligation to $62 per week.

Richard appealed that part of the court's ruling ordering him to pay child support for Marie. The appeal was transferred to the court of appeals, where the district court judgment was affirmed. This court granted further review.

II. *Scope of Review.*

Our review is de novo. *In re Marriage of Hilmo*, 623 N.W.2d 809, 811

(Iowa 2001). We give weight to the trial court's findings of fact, especially when considering the credibility of witnesses, but such findings do not bind us. *In re Marriage of Beecher*, 582 N.W.2d 510, 513 (Iowa 1998).

### III. *General Principles Governing Child Support.*

■ A parent's legal obligation to support his or her children does not necessarily end when the child reaches the age of majority. Iowa law includes within a parent's support obligation "support for a child of any age who is dependent on the parties to the dissolution proceedings because of physical or mental disability." Iowa Code § 598.1(9) (defining "support payments"); *see also id.* § 598.21(4)(*a*) (authorizing district court in dissolution proceeding to require parent "to pay an amount reasonable and necessary for supporting a child"). To determine whether a child is "dependent," we consider the child's ability to be gainfully employed and whether the child receives income or benefits from other sources. *See In re Marriage of Hansen*, 514 N.W.2d 109, 112 (Iowa Ct.App.1994).

■ Our child support guidelines do not apply to support involving dependent adult children. *See In re Marriage of Davis*, 462 N.W.2d 703, 705 (Iowa Ct.App. 1990). Therefore, in determining what amount of support is "reasonable and necessary," we look to the ability of both parents to contribute to the support of the dependent child. *See id.*

### IV. *Marie's Dependency.*

■ Upon our de novo review of the record, we find the following facts, granting due deference to the trial court's credibility determinations. At the time of trial, Marie was twenty years old. She was in good physical health; however, the state of her mental health was disputed. Marie is autistic and the Social Security Administration has held that she is disabled under federal disability rules for adults. Thus, Marie qualifies for supplemental security income (SSI) payments and receives $530 per month in SSI benefits. Although Marie has been prescribed medication for her condition, she chose to quit taking it, deciding on her own that she did not need it.

Marie lives with her mother, Jane. Jane serves as the payee for Marie's SSI payments and, with the approval of the federal authorities, receives $200 per month from these payments to cover rent and other living expenses for Marie. The balance of Marie's benefits is placed in one of her two bank accounts.

Marie graduated from high school in a mainstream program. Although she was accepted at a community college, she did not attend. Marie has a driver's license and can drive a car, a motorcycle, and a tractor. She is capable of physical labor, having assisted her father in several small construction projects and having worked on her grandmother's farm. Marie has also done lawn work and picked apples on an occasional basis. In addition, she works as needed for an appliance repair business, repairing appliances in return for a share of the profit if the appliance is later sold. In the past, she has repaired bicycles and then sold them. For a short period of time she provided care for her grandmother, who had suffered a stroke. This care involved helping her grandmother to the bathroom, assisting in meals, and helping with medications. Marie worked for approximately three weeks and then suddenly quit because she could not bear the emotional strain of seeing her grandmother in that condition.

Richard asserts that although Marie was not paid well for these jobs, they demonstrate her capabilities and her potential to

be gainfully employed. He also criticizes Jane for not exploring programs that would assist Marie in independent living.

Jane helps Marie in managing her money and paying her bills. Marie's own testimony showed that she did not have a full appreciation for the importance of money in meeting her needs. The evidence also showed that Marie's emotional health had deteriorated after her parent's divorce. She was forced to move with her mother out of the family home, a disturbing event that left her emotionally fragile.

The trial judge, who was able to see Marie and judge for himself which parent accurately characterized Marie's capabilities, concluded that while Marie "was polite and lucid, ... it [is] clear ... that [she] suffers limitations." As one of Richard's own witnesses observed, "She doesn't communicate real well with people on a general basis." The trial court concluded, based on his observations during trial and based on the credible evidence, that Marie did not have the mental or emotional ability to be employed at a steady job.

We agree with the district court and the court of appeals that Marie is not capable of gainful employment because of her disability. Although she is able to do physical labor, she has never been employed for more than two consecutive days. Other than payments by her father for her assistance on various building projects, Marie has only earned nominal sums. For example, she was paid in eggs, butter, and car repairs when she worked on her grandmother's farm, and she earned two dollars a day for yard work. These activities are a far cry from holding a regular job at a wage level that would contribute meaningfully to her financial needs. In addition to this evidence, we place substantial reliance on the trial court's ability to observe Marie, as well as the district court's implicit judgment with respect to the credibility of the witnesses who had differing views of Marie's capabilities.

We have not overlooked Richard's argument that Jane has not done enough to encourage greater independence by Marie. To the extent Richard claims Marie should be encouraged to live on her own, we fail to see how the circumstances of Marie's living arrangements relate to her employability, which is the relevant consideration for purposes of determining child support. Although there may be some truth in the assertion that Jane has not pushed Marie to find a steady job, we reject Richard's contention that Jane is fostering Marie's dependence for Jane's financial gain. This argument was not even made until Richard filed his petition for further review and it does not enjoy support in the record. Moreover, given the emotional toll taken on Marie by her parents' divorce and her move from the family home, we do not criticize Jane for focusing first on rebuilding Marie's feelings of security and general emotional well-being. Our present view of the situation should not, however, be interpreted to mean that the absence of efforts by *either* parent to assist Marie in obtaining the life skills to become more *financially* independent and self-sufficient should not be considered by the court in any future modification proceeding.

Having concluded that Marie cannot be gainfully employed at this time, we examine whether she has any outside sources of income to meet her needs. Marie receives just over $5700 in SSI benefits each year, but her estimated annual living expenses are nearly $9000. She is, therefore, in need of financial assistance from her parents. Consequently, Marie is a dependent adult child within the meaning of section 598.1(9). We now consider the level of support that her father should be required to contribute.

## V. *Reasonable and Necessary Support.*

As we previously noted, the child support guidelines do not govern our determination of the appropriate support payments that are required of the parent of an adult dependent child. Nonetheless, they are instructive and so we note preliminarily that under the guidelines, Richard would be obligated to pay approximately $76.50 per week in support based on the parties' respective incomes. (The record shows that Richard's annual income is $22,630 and Jane's annual income is $16,640.)

The trial court determined that Richard should pay support of only $62 per week. Although the court did not precisely explain the methodology used to arrive at this figure, the amount chosen by the court fits neatly into the overall financial situation of the involved persons. First of all, support of $62 per week results in yearly payments slightly less than the difference between Marie's annual expenses and annual SSI benefits, thus ensuring that Marie's minimum financial needs will be met. In addition, the amount of support Richard was ordered to pay equals the amount of child support payable by Jane to Richard. Therefore, the parties' child support obligations are offsetting, meaning neither party's income will be supplemented by the other party. The net effect is that the parties are put in roughly equivalent financial positions. Because Jane's and Marie's combined incomes are approximately the same as Richard's income, each household has approximately the same amount of income to support one parent and one child. We think this disposition is fair and equitable under the circumstances of this case.

Our decision does not ignore Jane's obligation to contribute to Marie's financial support. Although Marie's annual needs were computed to be just under $9000, we note this figure did not include any sums

for clothing other than shoes and boots, no amount for incidental expenses, and a very conservative sum for food. We have no doubt that Jane has in the past subsidized and will continue in the future to subsidize Marie's income as necessary.

In conclusion, we agree with the district court that Marie is a dependent adult child entitled to support from her parents. We also agree with the district court's determination that Richard should contribute $62.00 per week to Marie's support. Therefore, we affirm the court's order that the parties' child support obligations offset each other.

Costs are taxed to Richard. Each party will bear the expense of his or her own attorney.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**